UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOMETOWN VILLAGE OF
MARION ASSOCIATION,

       Plaintiff,                                           Civil Action No. 20-11458

v.

                                                    HON. MARK A. GOLDSMITH
MARION TOWNSHIP,
et al.,

       Defendants.
_____/

**OPINION & ORDER**
**(1) DISMISSING COUNTS VII AND VIII OF THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND (2) DENYING THE PENDING MOTIONS (Dkts. 32, 33, 34) WITHOUT PREJUDICE**

Plaintiff Hometown Village of Marion Association filed an eleven-count complaint stemming from Defendant Marion Township's use of property over which the Association claims ownership (Dkt. 1). The Township's ownership traces to a tax foreclosure in 2009, which purported to extinguish the rights of the Association's condominium developer over the disputed property, and a subsequent sale of the land to the Township the same year. Although the Township engaged in fairly open acts of ownership since 2010—leasing a portion of the property for farming, allowing the construction of a water tower, and granting a recorded utility easement—the Association filed the instant suit over a decade after the foreclosure sale, to challenge the validity of the foreclosure and the consequences flowing from it. Among those challenged consequences are the easements granted by the Township to Defendants Marion-Howell-Oceola-Genoa Water Authority (MHOG) and DTE Electric Company.

The parties agreed that phased discovery and motion practice would be appropriate because resolution of the Association's quiet title claim in Count VII might "inform resolution of all

remaining counts and defenses." See Joint Discovery Plan at 9 (Dkt. 19). A case management and scheduling order was issued accordingly (Dkt. 24). Following completion of discovery limited to the quiet title issue, the Township (Dkt. 32), MHOG (Dkt. 33), and the Association (Dkt. 34) filed motions for summary judgment on the quiet title claim. The motions by MHOG and the Association also concerned Count VIII of the complaint, which the Association said was "essentially identical" to Count VII. Association MSJ ¶ 2 (Dkt. 34); see also MHOG MSJ ¶ 3 (Dkt. 33) (addressing Counts VII and VIII together).

The Court ordered supplemental briefing to address the question of whether the Tax Injunction Act, 28 U.S.C. § 1341, divests this Court of jurisdiction over some or all of the Association's claims (Dkt. 46). The three parties that had filed motions for summary judgment submitted supplemental briefs as directed (Dkts. 47, 48, 49).[1]

Based upon that briefing, the Court is persuaded that its jurisdiction over the quiet title claim and related declaratory judgment claim is barred by the TIA. Accordingly, Counts VII and VIII are dismissed without prejudice.

## I. BACKGROUND

On August 10, 2000, the Township, the Association, and developer Delcor-Hometown Village of Marion, Ltd. signed a Planned Unit Development Agreement (PUD) concerning Hometown Village of Marion (Dkt. 34-7).[2] According to the PUD, the condominium and its 267

---

[1] DTE has only participated in a limited manner, filing a notice of joinder/concurrence with MHOG's motion for summary judgment (Dkt. 37). The Court assumes DTE would join generally in MHOG's arguments. Regardless, if a federal court determines at any time that it lacks subject-matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3). The Court, therefore, has an obligation to consider the TIA issue sua sponte with regard to the claims against DTE and does not see any reason to treat them differently from the claims against MHOG and the Township.

[2] Delcor was originally named as a Defendant to this suit. According to public records, it was dissolved on July 15, 2009. LARA Corporations Online Filing System, Delcor Homes – Hometown Village of Marion, LTD, https://perma.cc/8QSZ-93R4. Default was entered against it

units would be developed in three phases. See PUD at PageID.1019. By 2006, the first two phases were in various stages of completion, while the Phase III portion of the property—the primary subject of this lawsuit—remained undeveloped.[3]

In 2006, the Phase III portion of the property and units 134–173 became subject to a tax lien because of Delcor's failure to pay the summer and winter 2006 taxes, resulting in a certificate of forfeiture issued against it by the Livingston County Treasurer in 2008.[4] Certificate of Forfeiture of Real Property at PageID.797 (Dkt. 32-5). When the property was not timely redeemed, the Livingston County Circuit Court entered a judgment of foreclosure in 2009, through which the Michigan Department of Treasury became vested with title. Notice of Judgment of Foreclosure (Dkt. 34-9). The Department conveyed its interest to the Township later that year. Quit Claim Conveyance (Dkt. 34-4).

The Township proceeded to take various actions regarding the property. According to the Association, the Township leased a portion for farming activity. See Compl. ¶ 41 (Dkt. 1). After public hearings, it issued a permit to MHOG in 2011 to construct a water tower, which was completed in 2012. See March 2011 Minutes (Ex. 33-9); April 2011 Minutes (Ex. 33-10); May 2011 Minutes (Ex. 33-11); MHOG Statement of Material Facts ¶ 23 (Dkt. 33). It also granted a recorded easement to DTE for utility purposes in 2013. DTE Easement (Dkt. 1-7).

---

on October 21, 2020 (Dkt. 23). The Association acknowledges the dissolution, but it argues that Delcor nonetheless holds title to some of the disputed property. Compl. ¶¶ 7, 25 (Dkt. 1).

[3] The Association alleges that the Township obtained valid title to condominium units 134–173, units that were not part of Phase III, and owes unpaid assessments on those units. Compl. ¶¶ 106–111 (Dkt. 1). This opinion does not address Count IX, which raises that claim.

[4] The Township has argued that Phase III was never created and has objected to the use of the term Phase III. See Township MSJ Br. at 11. This opinion does not decide whether Phase III was created and merely uses the term as a convenient way to describe the land designated by the PUD for Phase III.

In 2020, the Association filed this action to challenge the Township's decade-long assertion of ownership. In Count VII, the Association requests the following relief:

> WHEREFORE, the Association respectfully requests the Court enter a recordable quiet title judgment in its favor and against Defendants that provides as follows: (A) the Township has never held valid title to the portion of the Condominium described in Exhibit I, referred to informally as "Phase III," nor title to Units 174 through 267 within the Condominium; (B) the Township and MHOG had no property rights to build, or allow to be built, the water tower and its related structures presently located in the northwest corner of the Condominium; (C) the Township had no rights to grant easements or leases over or to Condominium property to anyone for any reason, and any such grants are invalid and void; (D) Delcor Homes-Hometown Village of Marion, LTD is the titled owner of Units 174 through 267; and (E) except as to Delcor Homes-Hometown Village of Marion, LTD's fee simple title in Units 174 through 267, the Co-owners of the Condominium, represented here by the Association, have superior title over all other named Defendants to all general common element land located within the Condominium.

Compl. at PageID.25–26.[5] The Association seeks nearly identical relief in Count VIII, except the request is for a declaratory judgment rather than to quiet title. Id. at PageID.28.

The Association's contentions regarding title turn on a challenge to the foreclosure sale, which it argues was invalid under Michigan law. The theory is that shortly after the Phase III property became subject to a tax lien, Delcor recorded the sixth amendment to the master deed, (Dkt. 34-3), which added the Phase III land to the condominium and created individual units 174–267. See Association MSJ Br. at 4 (Dkt. 34). The Township Assessor never assigned individual tax parcel ID numbers to units 174–267. Township MSJ Br. at 4; see also MHOG Resp. Br. to Association MSJ at 3 (Dkt. 38); Township Resp. Br. to Association MSJ at 4–5 (Dkt. 39). The Association's view is that despite the assessor's failure to recognize the change in legal status, Phase III converted from a single land parcel capable of individual ownership to part of the

---

[5] The term "common elements" refers to portions of a condominium project other than the condominium units. Mich. Comp. Laws § 559.103.

4

condominium project composed of multiple units and common elements. See Association MSJ Br. at 4–5.

According to the Association, the foreclosure sale and the subsequent conveyance from Michigan to the Township were void, because they violated provisions of the Michigan Condominium Act that supposedly limit the manner in which common elements and units may be conveyed. See Association MSJ Br. at 14–16 (addressing the foreclosure); id. at 10–13 (addressing the conveyance from Michigan to the Township).[6] The Township and MHOG dispute the Association's interpretation and application of Michigan law. See generally MHOG Resp. Br. to Association MSJ; Township Resp. Br. to Association MSJ. But this is a dispute that the Court is powerless to resolve. As explained below, the TIA prohibits a federal court from invalidating a state tax foreclosure sale.

---

[6] Although the merit of the Association's argument is not legally relevant, the following summary of it provides some context. According to the Association, title to the units could only be conveyed by an instrument describing the units by unit number. Association MSJ Br. at 10 (citing Mich. Comp. Laws § 559.164). Both the foreclosure judgment (Dkt. 34-9) and the quit claim conveyance from Michigan to the Township (Dkt. 34-4) described the Phase III land by a metes and bounds description and by a single parcel number, rather than by unit numbers.

As for the common elements, the Association argues that the owners of units 1–267 collectively owned that property in accordance with an arrangement permitted by the Michigan Condominium Act. Association MSJ Br. at 9–10 (citing Mich. Comp. Laws § 559.137). Under that law, a master deed may "allocate to each condominium unit an undivided interest in the common elements proportionate to its percentage of value" of the condominium project as a whole. Mich. Comp. Laws § 559.137(1). With some limited exceptions, "the undivided interest in the common elements allocated to any condominium unit shall not be altered, and any purported transfer, encumbrance, or other disposition of that interest without the condominium unit to which it appertains is void." Mich. Comp. Laws § 559.137(5). According to the Association, the foreclosure and quit claim conveyance of the Phase III property unlawfully purported to transfer undivided interests in Phase III common elements held by owners of units 1–267 without transferring the units to which those interests appertained. Association Br. at 9–16.

5

## II.   ANALYSIS

If a federal court determines at any time that it lacks subject-matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3). Furthermore, "federal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue sua sponte." Answers in Genesis of Kentucky, Inc. v. Creation Ministries Int'l, Ltd., 556 F.3d 459, 465 (6th Cir. 2009).

The TIA is one constraint on federal court jurisdiction. The TIA states that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. As interpreted by the Supreme Court, "the Act divests the district court not only of jurisdiction to issue an injunction enjoining state officials, but also of jurisdiction to take actions that 'suspend or restrain' the assessment and collection of state taxes." California v. Grace Brethren Church, 457 U.S. 393, 408 (1982).

The crucial question at this stage is whether quieting title in favor of the Association or declaring that the Association has title would violate the TIA. The Court finds that it would. Reaching this conclusion takes two steps. First, the Association cannot receive the relief it seeks without invalidating a prior judgment of foreclosure. Second, the TIA bars federal courts from invaliding prior judgments of foreclosure. Each of these conclusions is addressed in turn.

**A. Quieting title in the Association's favor would require this Court to invalidate the prior judgment of foreclosure.**

As demonstrated by the language from the prayer for relief quoted above, the complaint demands judgment declaring that the Phase III land belongs to Delcor and the condominium co-owners the Association represents. The body of the complaint confirms, as well, that the

Association's claim regarding title is grounded in an attack on the foreclosure, which the Association alleged violated Michigan law:

> Neither the tax foreclosure process nor the quiet title judgment the Township obtained in 2010 did anything to divest the Original Developer of its title to Units 174 through 267, because those Units 174 through 267 were never foreclosed upon by reference to unit number as required by law and thus, although [Delcor] is no longer in existence, title to Units 174 through 267 remain in its name today.
>
> Furthermore, neither the tax foreclosure process, the quiet title judgment nor the failure to properly describe the subject property by the proper Unit numbers operated in any fashion to remove the Units from the Condominium or change the fact that the entire property was and continued to be part of the Condominium, and subject to the recorded Master Deed, Bylaws and other Condominium Documents and administration of its common elements by the Plaintiff Association.

Compl. ¶¶ 25–26.[7] The Association similarly argued in its motion for summary judgment that the foreclosure was void. See Association MSJ Br. at 14–16.

Now faced with the question of whether this Court has jurisdiction to declare the foreclosure void, the Association attempts to sweep the foreclosure question under the rug. The Association argues that it is not challenging the taxation of the property or the tax foreclosure process itself, that it is not asking for any kind of refund, and that the state of Michigan will keep the $372,850 in tax proceeds that it received when it conveyed the property in its possession to the Township. Association Suppl. Br. at 1–2 (Dkt. 49). It claims that "the issue in this case is what title did the State pass based on the legal description in the deed by which the Township took title to the disputed portion of land." Id. In other words, the Association wishes to focus the challenge on the Township's acquisition of title from the Michigan Department of Treasury, rather than on the Department's acquisition of title by foreclosure.

---

[7] The 2010 quiet title action referred to in the complaint extinguished any interest of TCF Bank in the property (Dkt. 34-10). It has no bearing on the Court's analysis in this opinion.

The Association's attempt to sidestep the question of whether the foreclosure was valid is frivolous. The Association seeks to quiet title to units 174–267 in Delcor's favor, and to quiet title to the general common elements in all condominium land (presumably Phases I–III) in the Association's favor. Compl. at PageID.25, 28.[8] However, a valid government foreclosure extinguishes, with some limited and inapplicable exceptions, all existing recorded and unrecorded interests in that property. Mich. Comp. Laws § 211.78k(5)(e). If the Court were to ignore the Association's statements in the complaint and briefing challenging the foreclosure and assume the foreclosure's validity, the Association's claim of title would fail because the foreclosure would have extinguished the Association's and Delcor's interests in the disputed property.

Furthermore, if the foreclosure was valid, and the only title challenge is to the conveyance from the Michigan Department of Treasury to the Township, then a successful challenge to that conveyance would mean that the Department would still hold title to the entire Phase III property. The Association offers no theory, and the Court can imagine none, under which the Association would somehow emerge with a claim to title based on invalidation of the conveyance between the Department and the Township. Simply put, invalidating the conveyance from the Michigan Department of Treasury to the Township would not provide the Association with the relief sought in Counts VII and VIII. To obtain title, the Association would need to challenge the foreclosure. And raising such a challenge, as discussed below, triggers the TIA's requirement that these claims be dismissed.

The Association's myopic focus on the conveyance from the Michigan Department of Treasury to the Township is more than just frivolous under Michigan law. Adopting such a focus

---

[8] Alternatively, the Association seeks declaratory judgment with the same effect. However, because these claims are essentially the same, this opinion will generally just refer to quieting title.

would present an insurmountable Article III standing issue for the Association. A federal court plaintiff must establish its standing, as required under Article III:

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–561 (1992) (punctuation modified, citations omitted).

A lawsuit challenging only the validity of the transaction between the Michigan Department of Treasury and the Township would fail the causality and redressability prongs. To the extent the Association ever had an interest in the Phase III property, the foreclosure sale—not the subsequent conveyance from the Department to the Township—caused the loss of that interest. And invalidation of the conveyance from the Department to the Township would not redress the injury, as title would be restored to the Department.

The Association urges the Court to focus on the relief actually sought in the complaint. See Suppl. Br. at 4. But the Court cannot grant the relief sought without first finding that the foreclosure judgment was invalid. The Association's complaint and motion for summary judgment acknowledge this fact; the supplemental brief unsuccessfully attempts to ignore it.

**B. The TIA prevents federal courts from considering attacks to state government foreclosures.**

As discussed above, quieting title in accordance with the Association's request would require the Court to invalidate the foreclosure on the disputed property. So the question now is whether the Court is allowed to do so under the TIA. The Court is persuaded by the reasoning

employed by another judge in this district, who considered a range of claims aimed at restoring former property owners' interest in property that had been taken by Wayne County in tax foreclosures. See Hammoud v. Cnty. of Wayne, No. 15-CV-14461, 2016 WL 4560635, at *4 (E.D. Mich. Sept. 1, 2016), aff'd sub nom. Hammoud v. Wayne Cnty., 697 F. App'x 445 (6th Cir. 2017). Like the Association, those plaintiffs claimed that they were not asking the court to enjoin the collection or assessment of taxes. Id. The court disagreed:

> But plaintiffs are asking the Court to set aside the judgments of foreclosure, vest title back in plaintiffs' names, and permit plaintiffs to pay the back taxes owed to Wayne County less the costs and fees of this litigation. Wayne County has already satisfied the tax liens by foreclosing on the properties. . . . To grant the relief plaintiffs seek—to undo the tax foreclosures—would certainly enjoin, suspend or restrain the assessment, levy or collection of a tax under State law.

Id. (punctuation modified, citations omitted).

Among other sources, the district court in Hammoud drew upon a Seventh Circuit case analyzing a challenge to a "tax lien sale"—a Cook County, Illinois process in which the county treasurer could sell a tax lien at auction. Wright v. Pappas, 256 F.3d 635, 636–637 (7th Cir. 2001). The lien would convert to a tax deed and title for the buyer if the property owner failed to redeem the property by reimbursing the lien's buyer. Id. The court held that "[a] lien sale is a mode of tax collection; and so an action to enjoin it, or declare it illegal, or rescind it . . . would be barred by the [TIA]." Id. at 637.

Another judge in this district reached a similar result in Anderson v. Cnty. of Wayne, No. 10-13708, 2011 WL 2470467 (E.D. Mich. June 20, 2011). In invoking the TIA to reject the homeowner's challenge to the tax foreclosure sale of his property, the court reasoned that the Sixth Circuit has held "that the TIA bars claims challenging the manner in which tax foreclosures are carried out." Id. at *7. The court relied on Dixon v. Oisten, 62 F. App'x 105, 105 (6th Cir. 2003), which affirmed a district court opinion holding that a challenge to a tax foreclosure on real property

10

was barred by the TIA. It further relied on Johnson v. Mich. Dep't of Treasury, 211 F.3d 1269, at *2 (6th Cir. May 4, 2000) (unpublished)), which held that the TIA required dismissal of a federal court action whose effect would be the invalidation of a tax foreclosure.

While the Sixth Circuit does not appear to have issued a published decision espousing the view that the TIA bars federal courts from undoing foreclosures, that is undoubtedly the correct view of the law, as confirmed by the Sixth Circuit's brief unpublished decisions cited above, the apparent unanimity of decisions from judges of this district, and the out-of-circuit Wright opinion. No authority presented to the Court undermines that conclusion.

The Association relies heavily on Freed v. Thomas, 976 F.3d 729 (6th Cir. 2020). In Freed, a homeowner fell behind on his property taxes by about $1,100. Id. at 732. As described by that court, "the State of Michigan foreclosed on his real property, sold it at auction for about half of its fair market value, and kept all the proceeds of the sale. Freed got nothing." Id. at 732. He filed a lawsuit that included a takings claim, which the district court dismissed on TIA grounds and the related doctrine of comity. Id.[9]

The Court of Appeals reversed. First, it noted that Freed did not "dispute his tax liability or delinquency." Id. at 734. Likewise, the Association does not dispute Delcor's tax liability. From the Association's perspective, so far so good.

Second, the court noted that Freed did not "quarrel with Michigan's authority to foreclose, sell his property, and satisfy his tax debt from the proceeds of the sale. As a result, Freed [did] not challenge or seek to enjoin state tax collection procedures." Id. Instead, he only challenged

---

[9] "Just as the Tax Injunction Act bars claims for injunctive and declaratory relief, comity principles restrain plaintiffs from asserting § 1983 actions against the validity of state tax systems in federal courts." Harrison v. Montgomery Cnty., Ohio, 997 F.3d 643, 652 (6th Cir. 2021) (punctuation modified, citation omitted).

11

Michigan's "post-collection failure to reimburse him for the excess proceeds from the sale of his property and the State's refusal to compensate him for the excess after-tax equity of his property." Freed, 976 F.3d at 734. Thus, it was a "case about post-collection federal constitutional violations that [could] proceed in federal court, not a tax case barred by the TIA." Id.

This is where the comparison to Freed falls apart. The Association is attempting to establish title by undoing the foreclosure itself, something Freed did not seek. Unlike Freed, the Association seeks to interfere with the machinery of collection.

Freed's discussion of what constitutes "collection" illustrates the distinction. The state contended that the plaintiff's suit for surplus equity was a challenge to the state's collection procedures, because recovery and sale of surplus equity were part of a comprehensive tax-collection procedure. 976 F.3d at 735. The court disagreed, finding that the collection procedure terminated when the state satisfied the $1,100 tax debt from the proceeds of the sale of Freed's property. Id. Freed's feud arose from post-collection actions, namely the state's refusal to pay Freed the excess proceeds and surplus equity. But as discussed above, the Association cannot succeed in its quiet title claim without first establishing that the state's foreclosure was invalid. And a challenge to a tax foreclosure sale is an assault on the very mechanism a state uses to collect its taxes; it is not a challenge to some post-collection activity such as retention of surplus equity.

Freed was recently reaffirmed by Harrison v. Montgomery Cnty., Ohio, 997 F.3d 643, 651–652 (6th Cir. 2021). But like the plaintiff in Freed, the Harrison plaintiff did not "seek to halt foreclosures of tax-delinquent property or even to get her home back." Id. The relief sought was only surplus equity.

Because the Association seeks equitable and declaratory relief in direct contravention to a state action that was integral to its tax collection effort, Freed and Harrison must be distinguished.

12

The quiet title and declaratory judgment counts fall within the relief that federal courts cannot provide.

This leaves the question of whether a "plain, speedy and efficient remedy" may be had in the courts of Michigan. See 28 U.S.C. § 1341. The Association concedes that the General Property Tax Act (GPTA), "properly applied," provides such a remedy. Association Suppl. Br. at 9. However, it claims that the record is undeveloped on the question of whether the GPTA was properly applied, because the record does not reflect whether the Association received notice of the tax foreclosure under Michigan Compiled Laws § 211.78f. Id. This is a somewhat peculiar way to frame the argument. The Association presumably knows whether it received notice. At the very least, it knows whether it believes it received notice. Its silence on whether it received notice is, if not deafening, certainly audible.

With that said, the issue of whether the Association received notice is something of a red herring. It claims that if it did not receive notice, "then of course it cannot be faulted for failure to avail itself of state court remedies." Id. But lack of notice is accounted for under Michigan law. Although the GPTA purported to prohibit Michigan courts from altering judgments of foreclosure if the property owner failed to redeem the property or appeal the judgment of foreclosure within 21 days of the foreclosure, the Michigan Supreme Court found that prohibition unconstitutional as applied to individuals deprived of constitutionally sufficient notice. See In re Treasurer of Wayne Cnty. for Foreclosure, 732 N.W.2d 458, 461–463 (Mich. 2007). The possibility that the Association did not receive notice does nothing to negate the conclusion that a fair, speedy, and efficient remedy may be had in the Michigan courts, as those courts appear quite protective of parties who have been deprived notice. Furthermore, even an expired remedy may qualify as a plain, speedy, and efficient recovery for TIA purposes, so it is irrelevant whether the Association may still pursue the remedy allowed by In re Treasurer. See Johnson, 211 F.3d 1269 at *2

(affirming a TIA dismissal where the plaintiff's plain, speedy, and efficient remedy was a redemption remedy of which the plaintiff failed to take advantage).

Finally, Count VII is a state law claim asserted under this Court's supplemental jurisdiction, and Count VIII is a declaratory judgment claim that could presumably be brought as a state declaratory judgment claim under Michigan Court Rule 2.605. The Court sees no reason why the Association could not bring the claims before a state court and pursue any relief it hoped to obtain here. According to the Association, the passage of time since the foreclosure and subsequent conveyance is no impediment to succeeding on the quiet title and declaratory judgment theories, because those conveyances were void; consequently, the conveyances are subject to challenge "'at any time and any place.'" Association MSJ Br. at 14–16 (quoting Carola Condominium Ass'n v. Chappell, 2016 WL 10952196, at *7 (Mich. Ct. App. 2016)). If this argument is correct, it would only confirm that the Association has a plain, speedy, and efficient remedy available.

In sum, the TIA bars the quiet title and declaratory judgment counts from being heard in the federal courts.

### III. CONCLUSION

The Court dismisses Counts VII and VIII of the complaint without prejudice, pursuant to the Tax Injunction Act. The pending motions concerning that claim (Dkts 32, 33, 34) are denied without prejudice. The Court will schedule a conference shortly to discuss further proceedings regarding the remaining claims.

SO ORDERED.

Dated: July 1, 2021       s/Mark A. Goldsmith
   Detroit, Michigan      MARK A. GOLDSMITH
                                      United States District Judge